Case No. 19-1030, et al. Nohomish County, Washington, petitioner v. Service Transportation Board, et al. Mr. Montague, the petitioner. Ms. Miller, the respondent. Good morning. If it pleases the Court, my name is Charles Montague. I am Counsel for Nohomish County, Washington. Snohomish County is located immediately north of King County, where it hosts the City of Seattle. As STB has argued, its licensing regulations for acquisition and operation of a railroad are, in general, permissive. Which is to say, they permit a party who applies to acquire and to operate the railroad, but do not mandate that it do so. They don't command that it do so. If the party does acquire and does operate the railroad, then it's subject to a host of additional limitations and restrictions. Now, if you're issuing a permissive regulation to operate, to acquire a railroad, it generally, well, inevitably, is subject to two conditions, either by statute or by regulation, or by case law. Number one, if I apply to acquire and operate a railroad, I must have the intent of operating a freight railroad, acquiring the property, the rail property, to operate a freight rail system on it. In addition, I must, in fact, acquire the rail property. I can't simply tell the STB, I'm going to acquire and operate a railroad, and not acquire the railroad. Instead, just commence operations. The reason is very simple. STB has no power of eminent domain. They don't want to obligate the government to buy the property of the underlying property owners in order to do this. The crux of this case, then, is very simply stated. A party, the Eastside Community Railroad, applied to the STB for a license to acquire and to operate a railroad. They said in their license application, and it was a verified application by one Douglas Ingle, that they were, in fact, going to acquire this property from an outfit called GNP. Unfortunately, they did not. There is no deed from GNP at all to ECR, Eastside Community Railroad. In fact, the record is bereft of any deed at all of any rail property from anyone, GNP, BNSF, anyone, any individual, to Eastside Community Rail to operate a railroad on. They had been operating a railroad on the property, however, and when we, the county, discovered what had happened, finally, we applied to revoke their license. Before I, just to clarify, was this an easement that was limited to use as a railroad line so that if it's not used as a railroad line, if your exemption, if the exemption is revoked so that it cannot be used as a railroad line, does it revert to the county? Yes, the county would, well, the county would, owns the underlying property. Our position is revocation of the license alone won't cause a reversion. This isn't an abandonment kind of action. Someone else has to, would be the common carrier on the line. Our view of who that common carrier would be, now, there's a common carrier obligation that goes with a railroad line. The license to acquire and to operate. Wait, I want to get to, if East Coast doesn't hold this easement, does somebody else? Or is it yours? If Eastside Rail doesn't own the easement, the record title owners, according to the county's research and the title commitment that we receive from an independent title company, are the father and the then wife, now ex-wife, of Douglas Engle, the man who signed the verification. So why does this help you? How would a ruling in this case help you? You still have an easement across your land. Either way. At least we would be dealing with a party who's not a trespasser. Sorry? We would be dealing with a party who is not a trespasser and we would know with whom we have to deal on contractual matters and also against whom to aim an adverse abandonment application in the event it reaches that point. At the current time, we're facing... Do the Engles have an obligation to run a railroad on there or they could have needed a bicycle path? I believe that there are multiple licensing violations at issue below. The one we have brought is this one on revocation of a license by an applicant who doesn't own anything. Under STB case law, as I understand it, they would view the actual owner of the freight rail easement as the railroad and they would presumably require that individual or entity to obtain a railroad operating license. There's an alternative one could conjure and that is that maybe this would go to another party, GNP, the original party that supposedly... Is there still a GNP? There is still a GNP. So they reorganized but they're back in business? Yeah, reorganized. They still exist out there. So your injury is you don't know who to contact? In fact, that's a point in the record. I'm sorry. Go ahead. Finish. That's a point in the record, I believe. I believe Mr. Engle testified that there was a signal company, NWSignal, that testified, filed a statement saying NWSignal was seeking to acquire GNP. It would either go back to GNP if the license were revoked or alternatively, STB case law suggests that the actual owner of the freight rail... I mean, if I am an entity that buys without their license authority the common carrier obligation, the rail line, then in general, when STB finds out about it, they'll say, you should get a license. Go get a license from us. And then if there's an issue with that license, then that can be taken up in that proceeding. Now, the STB said this is beyond our core expertise, go to a state court and get the property and contract questions sorted out, but without prejudice to coming back to them if in fact the state of affairs, as your brief to us describes, is borne out. So what's wrong with that? It's a delay to go to a state court for an advisory opinion to the federal agency about who owned what. It's kind of an advisory, isn't it? It's an actual adjudication of property rights, no? Well, it's quite a title proceeding under which the state could say, these guys own it, these guys do not, is a touchy thing because STB licenses preempt state law. Their position is no, not in this way, in the sense of who owns the easement. Their position is it doesn't preempt. I understand that they believe we can go to Washington State Court. We're not so certain that we would have a remedy in Washington State Court. Well, I'm not sure they believe you can either. I think the reconsideration decision drops a footnote that says, well, maybe you can't go there either. Yes. No, no, maybe you can't go there either. Yes, yes. So sad. There are a lot of problems with that as a remedy. One is that STB has also suggested we might have to reopen a bankruptcy proceeding that's five or six years old. And this is sort of a negative pregnant, that since this was from a bankruptcy proceeding, maybe there was fraud committed when these deeds out by Douglas Engel were issued, such that GMP didn't even own the—the irony of the situation, I'm jumping around, but the irony of this situation is that Douglas Engel, before he forced GMP into bankruptcy, before he forced it into bankruptcy, conveyed as an officer of GMP the freight rail easement to his father and his then wife. And they're the record title owners of it. That was a deed that's in the record. We've established that as well as it can be established. He then forces the entity into bankruptcy. It no longer owns the freight rail easement. His father and then wife file claims as creditors against the bankrupt estate, do not disclose that they've received a settlement. And in addition, Mr. Engel buttresses that point, and at the same time asserts that the freight rail easement that GMP owned was the primary and only valuable asset held by GMP. Of course, at the time, it was no longer held by GMP. They concealed it from the trustee, most likely, and the bankruptcy court. So we have a potential massive fraud. He has no incentive to reopen the proceeding because there were possibilities that Engel family members might end up in the clink or in jail. Well, I think the standard for vacating the exemption or revoking the exemption is false or misleading. False or misleading. Yes. And sending it, I guess, if the state court could adjudicate it, that might establish falsity.  There's actually this convoluted path on which there is something there. And so I'm confused as to what the standard is for whether this was independently misleading to the board. Okay. Whether it's false or not. The STD tries to paint this as a contract case, and the contract disputes are frequently given over to the state court. This is not a contract case. This is a pure property interest case. STD has adjudicated who owns what under state law all the time. It does it in abandonment proceedings when there's an OFA. It does it in feeder line applications. It does it to determine what the revenue is. My question is a little bit different, and that is if someone's filing one of these exemption applications with the board, is there some duty of candor? You said part of what they have to say is, and I'm going to either have this property or I'm going to get this property and use it this way. Absolutely there's a duty of candor. What precedent is there that would say if, in fact, getting this title is going to be quite complicated, because we're not even sure where this title is and there's a lot of moving parts here, that it was misleading. Yeah. I think if you're asked, there are kind of two levels to your question. Is there STD precedent for voiding the exemption when the party asserting they were going to acquire a title does not or cannot? Or misleading about the complexities of it. Yes, and or misleading. It's misleading at best. I would say it's just false to say that ECR acquired, but misleading certainly. Well, what the board says is, well, we can't figure out false until somebody sorts out this property interest. But I'm asking you something about misleading, which would seem to be something right squarely in the board's wheelhouse, is whether they feel like they've been misled. Surely. The fact that Mr. Engel knew that he had deeded this property to his relatives, and at the same time he's telling STV he's going to acquire it from GNP, and at the same time he knows GNP doesn't own it. No matter what, his obfuscation before the agency is kind of incredible. But the key are... Are there board cases about misleading? What level of candor or explanation as to the source of the property right to be acquired they require? When a party knows that the entity it's saying to the agency it's going to acquire from does not have the property right. I don't know of a stronger case for viewing that as misleading. Mr. Engel thinks that they had it by the time there was this bankruptcy. You disagree, and right. And that's maybe the property law question. But apart from the property law question is whether Mr. Engel should have said, well, we think GNP should have disclosed these series of transactions to avoid misleading. The board says actually a month ago you filed a petition with us, or someone filed a petition with us telling us that Telegraph Hill had this easement. And so what I'm... It seemed to me they were a bit exasperated about this level of candor. But I don't know what case law there is on what it means to be misleading the board, apart from I know you have your argument as to actual falsity, but apart from that is there a case law on what it means to be misleading? And we do cite case law saying that if an individual claims that they have an agreement to acquire, but the agreement doesn't exist or there's some problem with it, I would say a problem is it can't be implemented, then that's misleading. I don't think the issue of misleading can be left up to what Mr. Engel's judgment. There has to be a more objective criteria than what a gripper claims. And you have cases where someone said we're going to acquire this, but that was misleading. And so I think what we're asking is without suggesting that we don't agree with your falsity argument, if it were the case that the STD really can't decide true or false, doesn't it have more expertise and more of a domain over its idea of what's misleading in the context of the STD? What misleads the board. What misleads the board and what misleads people who it is regulating. And so even if it's not false, even if it turns out to be true, but it's misleading, is there any case that goes off on misleadingness alone that you could point us to? In other words, where the STD said may or may not be false. Even if at the end of the day it's true what this applicant said. Black Hills. It was really misleading. I would say the Black Hills case cited in our brief comes at least close to what you're saying. The parties there, it's a somewhat similar regulation. The party that sought the real operating right applied. It turned out they did not have the property interest in question. And the agency said that that was sufficient basis to deny the exemption modified certificate that they sought. And that was in the context of an initial application as opposed to under this screen of very deferential reviews. So what about that? The STD says this is sort of super duper deference when you come up later and say this should be voided. But the regulation and their order says that if there are false or misleading information that's supplied, it is to be voided. That's what the regulation and the order both say. And I don't know how we could have stronger evidence, honestly, than what we presented. That the ECR never got a deed. Certainly never got a deed that conforms to Washington law. It just doesn't comply with the statute of frauds. Anything that they cite, well this, that, the other, nothing that they cite, including all this application stuff that he tries to trip people up with, complies with statute of frauds. The bottom line, though, is there's just no deed in a bankruptcy case. But just to push back on that, there is a deed, right? And in a way, isn't Mr. Engel's offense that he's not respecting the corporate form or the lines between himself, his family? There's all kinds of self-dealing, his company that he was employed by, the company he's later associated with. But doesn't, the deed does exist, and it's with his team at some point, no? So is it, I'm just pushing back on the nature of the wrong here. That Engel is saying, you know, it's not going to matter to the STD at the end of the day, whether it's, you know, this acronym organization, that acronym organization, my cousin, my uncle, my wife, or me. But we've got this under control. We've got this deed. If you make a representation to a government agency that you're going to do something, and then you don't do that, and instead say, well, I have a colleague or I have a friend in Belarus who will do it for me. Or if I have this person in a hospital somewhere. Now, they don't want to operate a railroad. They're not real railroad. But that's where I want to put the responsibility. That's alarming to me. And I would think it should be to the agency, if the agency thinks that's okay. Then why didn't it say to Mr. Engel, Mr. Engel, why don't you get the deed from these people and put it back in ECR? What Mr. Engel told the agency is that basically ECR never owned anything in this line. He's now claiming, and he asserts, that his father and he own the railroad rights. And I guess he's trying to be part of it to this Northwest Signal Company, too. All of which, if you read the regulations, require a license from STB. But has anyone applied for a license? No. Now, why should that concern the county? We would probably be out there objecting. We'd be saying, these people have a track record that isn't very Ivy League, isn't very Commonwealth. Why should that be a concern? Because federal rail policy supposedly is supposed to protect the integrity of agency processes to weed out corruption in the rail industry. If you're going to lie to the agency or not conform to its regulations and this goes rampant, what use is it to have STB in the regulations? Either they should enforce clear requirements or they, why have them? The railway has been being operated by Ballard? Mm-hmm. Ballard Terminal's claim to operate the railroad is based on a lease from ECR. And they and their pleading said they had no idea what was going on. They basically said, we lack knowledge. We add the revocation as to their license because it's based on a flawed ECR license. The county has no problem in trying to deal more directly with an outfit like BTRC, which in fact has an operational capability. They have rail employees. They've rented a locomotive from BNSF. But that's different from GMP and also they themselves are noncompliance. Thank you very much. Thank you, Your Honors. I have reserved two minutes. May it please the Court, my name is Barbara Miller and I am here on behalf of the respondents to the Surface Transportation Board and the United States of America. The petitions for review here fail for two reasons. One, this Court lacks jurisdiction to review the two board orders at issue here. And two, even if this Court had jurisdiction, the county's claims fail on the merits. First and foremost, the Court lacks jurisdiction over both the December merits order and the May reconsideration order. Because lack of jurisdiction over the order denying reconsideration is one that is easily resolved, does not appear to be in dispute based on the county's reply. I'm going to start there. This was sort of a weird series of circumstances that we went through here in getting the different petitions filed and we held the case in abeyance and then we consolidated the two cases sui espante. Was the Board surprised to discover that they wanted to challenge the merits order? Was there any surprise? You submitted both administrative records after we consolidated the case. You updated the first one and submitted the second one. Then the second one related to the reconsideration order, and we do not deny that the reconsideration order was appealed in that second petition. At that time you also provided an update of the initial. Is that December? Was the first one December? The first one was December. So you also updated the December records. Even though that second petition only referenced the reconsideration decisions. We updated it under the first case number because, yes, the May reconsideration order is relevant to that appeal. Actually, the reconsideration order is relevant to both appeals, but that does not mean that the appeals. Were you surprised? Did you not understand them to want to be challenging? From all the different filings, their response to your motion to dismiss, we just want to make sure we can review that. Were you surprised? Were you prejudiced? Well, Your Honor, this Court has repeatedly held that the question of prejudice to the agency is not reached. That's a separate one. I get that, but you don't allege prejudice. Excuse me? You don't allege prejudice. We have not. And then just on the series of filings that happened here, did you understand them that they wanted to challenge that December order? Your Honor, I don't. Whether the record did not reflect an intent to appeal that order in the second appeal. And this Court has consistently looked at if a specific order is not attached. We said, look, if they don't reference it in the second petition, but if we can infer, fairly infer, from all the related filings that they wanted to challenge the initial decision, then that's good enough. Well, with respect to the second petition, there were no filings. There were no contemporary. Well, that was on us because we immediately consolidated it and didn't ask for a second docketing statement. Well, there is nothing that prevented the county from filing something, making clear their intent. Were you confused as to their intent? As to what they meant to appeal in the second petition? Based on that petition for review, it was simply the May reconsideration order, and that May reconsideration order is not reviewable by this Court. And this Court looks to the party's intent, not the Court's intent. And the party's intent here, there is nothing in the record. So if we determine that they still intended to challenge the December petition, then there's no jurisdictional issue. If we determine from this whole series of events that their intent was displayed, then there's no jurisdictional issue. If this Court determines that you can infer their intent from contemporaneous filings with that second petition, then no, there wouldn't be. It's very fair of you to raise the issue. I don't mean to. I'm sorry? It's very fair of you to raise the issue. I don't mean to question that at all. It's a serious question, and certainly they should have referenced both decisions. But there was a lot of confusion with the shutdown and the timing and everything that was going on in the NARA-Suiz-Fonte actions. Well, again. They were holding it in abeyance of the time they filed the second petition. The first one was still here. I don't think the fact that it was held in abeyance really affects, again, the intent to infer the order, as this Court has held in American Rivers, in Melcher. It looks at two petitions to review different orders in the same proceeding independently. And it looks at the intent that is inferable from each petition for review independently. And if you look at that, and consolidation itself does not mean that there is no question as to what the intent was. You still go and you still look to the petition. And if the petition does not specifically reference an order, as it is required to do under Rule 15, then you look at whether you can fairly infer an intent to appeal a different order than was named by fairly contemporaneous filing. And there are no fairly contemporaneous filings in connection with that second petition. And even if you could look back to the filings in connection with the first petition, this Court has held that pleadings filed four months apart are, quote, plainly not contemporaneous filings. And so either way, there is nothing that you can look for under the standard that this Court has repeatedly applied from which you could infer intent here. Seems like the papers on the motion to dismiss the incurably premature first petition, both the opposition to the motion to dismiss and your reply, shared the understanding that the right time and place to challenge the order was after the reconsideration was finalized. And then, indeed, after the reconsideration was finalized, the county files a petition. So it does seem like there was a shared understanding that they were trying to, you know, record initial petition and then file a ripe petition afterwards. And so the motion to dismiss filings and also the updating on your part of the appendices, it's like, okay, now we have our case. And the case clearly has to be about that first order because the second order is not even subject to our review. Well, except I would say this Court has, in multiple cases where parties made an error and only appealed an unappealable reconsideration order, has dismissed the petition. Well, they only did that, but here where there was an effort to go after the first order, we have looked back, as in the Domtar case, at an earlier petition and said, okay, they meant to roll that all into one at the end. I mean, it's obviously a mistake on their part. I mean, it's not good practice. But the question is, is there, are there indicia of an intent to bring that up? I actually would love to hear from you on the merits. Because, you know, the question about whether this was misleading, and I recognize there's a protective, a relatively deferential standard of review, but if we look at this, for example, through kind of what we in the federal courts would do, what we would think of as a summary judgment lens, you would at least, in order to say this isn't false or misleading, you would at least need to have some creditable version of events by which the application was actually non-misleading and non-false. And I'm not sure what your position is on that. What, what is the story, other than Engel just sort of saying, denying things? What is the story that actually is positive? That is plausible and has evidentiary support where the county might be wrong and the application might have been non-misleading? Well, the question is not just based on Engel's assertions. First of all, the fact that there was a dispute here, well, the fact that there were questions as to ownership here was clear on the face of the county's petitions. And the, I would also say that in a, it is not just Engel's version that is at issue here, but if in fact, but what happened in the bankruptcy court as well, if by questioning the ownership here and whether that, whether the easement was transferred from GMP to ECR, that is also bringing into question, necessarily, the ownership of the property. What occurred in the bankruptcy court? Well, I think we don't know what happened in the bankruptcy court. It doesn't matter. Why does it matter? It matters because if the, the, the, the petitioner's entire claim is, we have one valid transaction and that was the transaction from GMP to the Engels. And in fact, we don't know whether that transaction is valid. But we also have the petitioner saying, nothing that happened in bankruptcy court that the bankruptcy court thinks happened. And the transactions that they authorized and think that they effectuated, none of those happened. What if they, what if the filing, maybe the bankruptcy court was misled, but what has that got to do with whether the board was misled when Engel filed this application without disclosing questions or issues? Because we don't know if the bankruptcy court was misled. We don't know if the... Why does that matter when he didn't disclose? You know that there's at least an issue. Does anyone dispute that this is not as clean cut as the exemption application portrayed it? And that, in fact, there are complexities and disputes and serious questions. I didn't take the board to be disputing that. In fact, they went out of their way to scold Mr. Engel for his lack of candor. The, the questionability and the troubling behavior, as we stated in the, in the December order of Mr. Engel, it does not necessarily mean that he was incorrect when he made those, at the time that he made those, those representations to the board as to ownership. Failure, this is the board's own language in the Black Hills case. Failure to disclose potential issues regarding ownership of the issue line in a notice could be found to be materially misleading by omission. If the state did not have the necessary interest that they were represented, such circumstances, the notice of exemption would have contained false information, would be void of an issue. So, so it sounds to me like the board treats something as misleading when they failure, failure to disclose potential issues regarding the ownership of the issue, of the, of the relevant, the relevant property. Your Honor, this is why it is relevant what happened in the bankruptcy court, because those may not have been misleading misrepresentations to the board. It may be that if the bankruptcy court did, in fact, avoid that transfer and did, in fact, issue a deed. There was no avoiding of that transfer. That would be a matter of public record. That was not avoided. We don't have a complete record of the bankruptcy court, and so we don't know what happened, and I would be very. So it sounds like it was misleading. We don't know if it was misleading, and the basis of the county. This is the question that I was trying to focus you on when I was adverting to how, at least in the federal court, we would do a summary judgment standard. You can't just say we don't know. When a party has come forward and given you a factual and legal theory about misleadingness, you don't have to buy that theory. But if you're not going to buy it, you have to have a different version of how the facts and the law line up so that it's not misleading and not false. And if you have that, then you can say, fine, I'm not going to adjudicate this. And there might be someone else that should, but I don't even see what STB's position is. Or I would like your help in tracing through what STB's position is as to how what happened, notwithstanding the county's detailed factual and legal recitation, how what happened might in fact have been completely non-false and non-misleading. You don't have to say that's actually what happened, but all I'm asking for is like a connecting the dots. Connecting the dots of what a state court were to exercise jurisdiction over the properties who might find that would be consistent with non-falsehood and non-misleadingness. Does that make sense? It does. And let me start with the fact, just to clarify, the question that was presented to us was not, has Mr. Engel conducted, has engaged in questionable conduct. It was, this was false. GMP did not own this easement when they made that representation to the board. And only on that basis did the county ask us to recall. Well, they kept referencing the false and misleading authority, and that's used, they're being used all the time. It was based on this concrete position that GMP did not own the easement when they filed for authority. Right, because Engel himself said other people owned it. And he himself is speaking out of two sides of his mouth. Right? When you say other, I'm assuming you mean his pleadings in the revocation proceeding? Yeah, the wife and the father-in-law. Or father. Father and ex-wife. The wife and the father. But again, based on his allegations, and I'm not defending his veracity, based on his allegations, if you were to accept them as true, then his representation to the board was not incorrect. But he didn't flag, he didn't disclose in the exemption application. I'm not talking about what he did in response. His exemption application did not disclose these potential issues that the exemption said, I'm going to get it from GMP. And he did not disclose, well. Because if the bankruptcy court, as it believed it did, effectively transferred, if the bankruptcy court's actions were valid and its transactions were effective, that was not of misrepresentation to the board. You just said you weren't going to applaud his lack of veracity before the board. I just don't know how. And the fact that the board went out of its way to shake its finger at him and scold him for not being honest in his filings, and in fact dropped a foot in it going, a month ago we were told that Telegraph Hill held this easement. I don't know how they can make those statements and not say, and say they need a State court to tell them whether they were misled, given their rule about failure to disclose potential issues regarding ownership. Was it even a potential issue? Was it not even a, when he said we're going to get it from GMP, was it not still a potential issue when he didn't disclose that in fact GMP doesn't have it? My wife and father have it. There's a deed here, under suspicious circumstances, but they're going to give it to this person. But there's no actual deed recorded. Or as the board found properly executed, or completely executed deed to them. But we're going to say we think it's good enough, and because we duped the bankruptcy court, it doesn't count as duping the board, too. But that is assuming that we know who owned the easement at that point. No, no, no, I'm backing up and saying it was his job to show you who owned the easement. But if that was not in question, if the ownership was not in question, then it wasn't misleading to say GMP owns this. There was a period of time to create all of these. So, because we don't know whether each of these three transactions was valid, we, under state law, we do not know whether that was an actual misrepresentation, or it was misleading because it omitted issues at the time they made that representation. And that's what I'm not understanding. How is his failure to disclose that, in fact, it's a huge gray area? Maybe he'll end up eking out a win in State court if they can go there. But is this — I mean, does the board really think that even if they were to go to State court, and if a State court were to adjudicate this and go, bad, bad, this is not how you do deeds, there's nothing valid, but for whatever combination of circumstances, we're going to hold our nose and say at the end of the day it was somehow bad. Enough back in GMP's hands to be executed through the bankruptcy process. Is the board ready to say that's fine? His filing with us for the exemption was fine. It wasn't misleading. It was fine that he didn't disclose any of these problems to us. This is all that we expect of attorneys is when they file an exemption is just to say their bottom conclusion and not disclose these issues. Is that the board's position? The county did not ask for relief based on Engle not disclosing a question. I'm just asking you because the board went out of its way, as I read it, to say, what are you doing filing stuff like that with us? And we've got precedent that says failure to disclose ownership issues can lead to something be vacated as false or misleading. But, again, until a court with the expertise to address these. Why do you need the State court to tell you whether you were misled? Because we don't know at this point either the nature of whether we were misled or how we were misled. Then why did you scold Mr. Engle if he didn't mislead you? The reprimand to Mr. Engle was for failing to, I believe, for failing to come to the board for authority for these transfers, which any transfer of ownership. Which is yet another problem with the ownership law. Which is another problem. If those transfers happened, that is a potential problem. There's no factual question that these things happened. We don't. Well, if the order was for his references to transferring to, again, to his wife and to his father, whom, again, we do not know if that transaction was valid. We do not. So we don't know if the easement was ever even transferred from GNP. These are. And, again, the. Wait. You don't know. I mean, the one thing we all know is there is a recorded valid deed transferred from GNP to dad and wife. There is a recorded deed. Right. Whether that transfer was valid or not, we do not know that. It was valid because the trustee didn't claw it back. We don't know if the trustee clawed it back. The trustee didn't claw it back. Well, and there's no evidence on the other side. That's why I look at the summary judgment standard rather than. You don't have to do fact finding, but it seems like to say that there's a dispute. You know, as lawyers, we only say there's a dispute not because someone says, oh, that's a bunch of garbage, but because somebody says, well, you see evidence. Hey, let's look at evidence. Not a. And that creates a dispute. And so we have a deed and it's not in GNP. It wasn't. Therefore, it could have been affected by GNP's bankruptcy. Then how is there a factual dispute about that deed? Well, the issue is there's both a factual and a legal dispute. And, yes, there is a deed. Whether that was legal, whether, for example, Mr. Engle had the authority to unilaterally transfer the only primary asset of GNP without the knowledge or sign-off of the president of the company, I think is a valid question. But that doesn't change the legality of a deed under state law. It might mean GNP can sue Mr. Engle for damages. But that doesn't change the property. If it does or does not, that would be a question of state law. And it is the fact that if we look at this as a summary judgment question and a weighing of the evidence, you not only look at the facts, you have to look at the state law question and Washington property law. Can I jump in here? I'm trying to understand what the board's position was when it issued its order. Are you saying that the board, at the time that it issued its order, construed the county's petition to be making a claim that the notice contained false information and that the county did not make a claim that the notice contained misleading information? The contention by the county was that it was false or misleading because GNP did not own the property. The question where I was saying earlier about misleading was the fact that the county never claimed that because the ownership dispute or the gray area or the fact that there was a question was never disclosed was misleading. Their claim was limited strictly to GNP didn't own the easement and that is the basis of their petition to revoke, whether it's characterized as concretely false or misleading. That was the crux in their sole contention. No ownership. That was the sole basis. Because when I look at the board's decision on page 7, this is at JA 482, the board says in that first full paragraph on that page that the entire petition turns on basically whether GNP owned the easement when ECR filed the notice. And that that's something that a state court or maybe a bankruptcy court is going to have to determine. It seems to me that the board never did any sort of separate analysis to say whether the filings themselves were misleading. The board just said the only thing that really we care about is whether it was true or not that they owned this property and a court has to decide that. But there was no separate analysis of whether in the totality of circumstances what was filed before us was incomplete or misleading. I don't see that analysis as having taken place. And that is because the basis for the county's petition to revoke was GNP did not own the easement when it said it did. Whether you characterize that again as misleading or outright false, that was the only question that they were asking for relief based on. And so that is the question that we addressed. So do you agree with me that that that analysis of whether it was misleading for any other reason was not conducted? I don't believe it was. So if we disagree with you about how to construe the county's petition, wouldn't the appropriate thing for us to be to grant the petition for review and remand? Well, no, because again, whether you're talking about misrepresentation because of questions as to ownership or misrepresentations because it was outright false, it still comes down to whether there was a question as to ownership, whether the representation was false. It requires application of state property law, and the board has consistently and reasonably held we do not decide these questions. Here's the, I guess, kind of the conceptual difficulty I'm having that I'd ask you to help me with, is that this whole exemption process was part of Congress wanting to avoid excessive regulation. And so it's allowing the carrier to kind of skip a step. Why isn't the right way to look at this, that if the carrier is playing fast and loose with that application, they don't get to skip a step? They've got to go through the full process. And the burden should be on them and not the burden on the county to try to figure out how to unscramble this. Why isn't that the right way to kind of look at as far as like the way that this ought to work or the equities of how this ought to work? I think there's a couple of issues there. One, when you are asking to revoke a petition, the burden is on the county. And that is consistent, longstanding board precedent. And so they are saying, board, you need to revoke the authority that you granted six years ago or however long ago it was. The county has the burden to show that that revocation is appropriate. And here, again, the county did not come to us saying, Engle is a shady character. He's done all of these possible transactions. You don't want him to have a board authority here. They said... I don't know how you can read anything they filed without understanding it to say that Engle engaged in a lot of shady self-dealing here. But again, there were references to that. But the board decided the issue that was before it. And the issue that was before it was, has the county proven that GMP absolutely did not own the easement when it made that representation to the court? And the board determined that to make that decision, it required state law expertise and possibly federal bankruptcy law expertise that the board simply does not have. The board is not an expert in the state laws of all 50 jurisdictions. Am I just... So that's, I think, a separate question I have for you. And that is, as they sort of more honestly acknowledged in their... Or more forthrightly or explicitly acknowledged in their reconsideration decision, they said, well, it may well be your right that state courts can't adjudicate this because of preemption. Oh, well. And the board has settled precedent that trespass actions cannot be adjudicated. Correct. And quiet title actions. At least when someone asserts an adverse possession. And I don't know why it would be any different, because the whole point of the quiet title action is that it's going to disrupt who has title and, in this case, who can do what along this line. Is it the board's position that states can adjudicate quiet title actions over property on which a railroad is running? Yes, because the question as to ownership, as Mr. Montaigne correctly said, is separate from that as to whether you have authorization... Wait, if this were a revocation of exemption, and there was a railroad line running and someone said, I think it's running over my property, I'm filing in state court a quiet title action to obtain the remedy of ejection of that railroad line, the board's position truly is that that's not preempted? I misunderstood your question. When the question is who owns the property, the board has said, we do not prompt, we do not preempt a determination as to who owns the property. If you look at the cases that we cited, they, in our brief, DNS, General Railway, Allied and Allegheny, they all involved property disputes. Were they quiet title actions? One of them, I believe, was a quiet title action, and the... It wasn't just a contract dispute? I don't believe so, no. They have said, I am shocked to hear that quiet title actions with a remedy of ejectment can happen for property? As I said, board authorization is separate from quiet title action. I get that. And so once, so, in other words, when we provide authorization, the party then has to go obtain the property rights and contractual rights to engage in those authorized activities. So here, now the state court can answer the question of which of these transactions were valid under state law and who actually owns the easement. And once we know that, then the question of board authorization over the easement can be addressed. So an adjudication of the state property question does not remove board authority and its licensing over that easement? They are separate questions. So is the theory here that the state court will simply say, you have title or you don't have title, or let's say East Coast, you don't have title, but not afford any remedy? Because they have to come back to the board for a remedy? Is that the theory? That is correct. And what authority do you have that Washington state courts will adjudicate disputes where they cannot give the necessary remedy that comes with a quiet title action? Well, I think they could bring a trespass action then without any remedy. I understand Washington courts not to do that. Do you have any, does the board have any precedent, I assume not given the footnote it dropped, any authority that the Washington courts will do what it wants here, and that is issue an advisory opinion as to who has title, but there's nothing we can do to enforce it? But I don't think it's an advisory opinion because they will, in fact, be adjudicating those state property rights. No, but they can't be declaratory. I mean, this is, I get back to my, I'm fixated on this summary judgment posture framework. If you had a different, you know, they brought in an expert on, you know, who traced the title and this and that and the other. You could have had a different expert saying, no, no, no, no, no, we understand under state law, you know, that actions never went out of GMP in the first place. And, you know, Engel had no authority to do that and his claim that it was, you know, given back promptly, that's just a fantasy. And, in fact, it was with the bankruptcy estate and then it went to ECR and all is well and good. That, it seems to me, is rather than seek an advisory opinion, that would be the way to at least give the board an ability to say, you know, is this colorably true or is this misleading and maybe even false for purposes of the exercise of the board's regulatory authority. Not for purposes of adjudicating a state law outcome, but for purposes of respect for the board's regulatory authority, but that we don't have that. Well, I think that before the board can determine what was misleading and what potentially would be the appropriate remedy for that, if there were misleading statements made to the board, would be what, in fact, is misleading, what is the scope of that, and then at that point, it would be appropriate for the board to address it. And it wouldn't be a ground for voiding an exemption that the holder never reports acknowledged deed transfers, easement transfers, because that's part of the initial decision saying, look, we have, you know, we have a requirement that whenever property on which a railroad is running is transferred, we're supposed to authorize that. But the failure to fulfill that requirement is not a ground for voiding. Well, again, until we know which of those transfers were valid, we don't know which of those transfers actually required our authority, and so we can't fully address the question. But if there were, if it was undisputed that there was a transfer, and it was done without the requisite board authorization, would that be a ground to voiding an exemption? I don't want to get ahead of what the board would do in a hypothetical situation. I think there are circumstances in which it might be, but there are also circumstances in which transactions occur where the parties do not, do not obtain prior authorization, and they come back to the board and say, look, we're not going to do that. We give retroactive authorization. And so I think that would, that fact situation, since we don't know what we're dealing with, it would be, I don't think I can say definitively here. And as a policy matter, clearly there's some stickiness to, once the license top rate has been granted, you don't want to be taking it away. Can you just sort of give us a better sense of why that is? I mean, if I'm a licensing entity, and an entity that I've licensed has thumbed its nose at me, I would think I would want to say, go away. You're grounded. I'm not going to give you this privilege anymore. It seems like there's something pushing on the other side for the board, and I'm just curious what that is. And that is why the board admonished Mr. Engel for it. Right, I get that, but I'm asking about the other side. Like, why is it so reluctant to throw the book when it's having, when its authority is being disrespected, in at least plausibly alleged to being, to having been disrespected in so many ways? Because we, at this point, I think it would be premature at this point, because we truly don't know what happened. And so if, once the board, once the board has been granted authorization, we can't do that. If the county comes back to the board after a state court, looks at the state law property issues, and issues a declaratory judgment, or what have you, adjudicating the property rights here, they come back to us and say, here, we know what happened. Then the board is in a different position. But again, we simply do not know who owns what here, and what conduct could have been misleading. Was ECR not a party to the proceedings that the county's petitioned before the board? The, Mr. Engel filed purportedly on behalf of ECR in response to, in this proceeding. They filed a response, he filed two, one in August and one in September, addressing the issues raised, actually specifically in connection with the ECR. And that's the 383 to 413 on the record? Well, as I said, there's two, he filed two responses. And so, well, give me a moment, I can give you the, I think the first response starts at 383 of the Joint Appendix. And his second response starts at 461. Thank you. Thank you very much. We've kept you up for quite a long time. Thank you, Your Honor. Any further questions? All right, Mr. Montague, we'll give you two minutes. I will comment briefly on the merits, and then I would like to address very briefly the standard question. You've got two minutes. One thing that I could recommend to the Court is to look at JA389, which is one of Engel's responses. And he says in there that G&P, that is this entity in bankruptcy, did not follow through on reversing the title changes. And by that, I think the clear reference is to his deed out to Joanne, his then wife, and to Doug, his now wife. And he says they did not follow through because it was not my concern at the time. In other words, he chose not to raise it with the trustee in bankruptcy. He did not make any attempt to reverse those title changes. I think the record is pretty clear that G&P never had any title to this during the course of that entire bankruptcy proceeding. There are other elements I could cite. I'll just leave it at that. Now, on the jurisdictional point, as Your Honor's very perceptively indicated, I think the contemporaneous evidence indicates very clearly that we were desperate to get review of the original decision. I wrote in response to the motion to dismiss, it would be a denial of due process to dismiss this petition for judicial review of the SIPR 13 STV decision. In the finance docket 35692 and FD 35730, if one, STV subsequently denied the county's February 4th administrative appeal for failure to show material error, two, STV then contended the appeal was untimely, under 49 CFR 1115.3e, or three, and or three, a reviewing court under Brotherhood of Locomotive Engineers accordingly determined that the court's lack of jurisdiction to obtain meaningful judicial review of the agency's rulings in these two dockets. Snohomish County, under the agency's regulations, is entitled to a meaningful opportunity to seek timely reconsideration. To do so, it's not responsible to shut down, ultimately conform, blah, blah, blah. All right. Thank you very much. We will read that docket.
judges: Millett, Pillard, Wilkins